2020 IL App (1st) 172124

No. 1-17-2124

Second Division
November 4, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| | ) | Appeal from the |
| THE PEOPLE OF THE STATE OF | ) | Circuit Court of |
| ILLINOIS, | ) | Cook County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | No. 15 CR 8383 |
| v. | ) | |
| | ) | |
| MICHAEL MASON, | ) | Honorable |
| | ) | Paula M. Daleo |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court, with opinion.
Justices Lavin and Pucinski concurred in the judgment of the court, with
opinion.

**OPINION**

¶ 1     Following a bench trial, defendant Michael Mason was convicted on two counts of
aggravated criminal sexual assault. He was sentenced to a total of 12 years in prison followed by
a term of 3 years to life on mandatory supervised release (MSR). The sole issue raised on appeal
is whether the trial court erred in imposing the term of MSR under an amended version of the MSR
statute rather than a previous version that provided for only three years of MSR. Defendant argues

that he should have been allowed to choose the more lenient version of the statute because the State did not prove beyond a reasonable doubt that he committed the offenses after the effective date of the amended version. For the following reasons, we affirm defendant's sentence.

¶ 2                                I. BACKGROUND

¶ 3      In May 2015, defendant was charged by indictment with two counts of aggravated criminal sexual assault (counts I and II) and two counts of aggravated criminal sexual abuse (counts III and IV) based on events that allegedly occurred when defendant was under 17 years of age and alleged victim Z.W. was under 9 years of age. Count I alleged that defendant committed "an act of sexual penetration upon Z.W" by putting his mouth on Z.W.'s vagina. Count II alleged that defendant committed "an act of sexual penetration upon Z.W" by causing his penis to contact Z.W.'s mouth. Count III was based on alleged contact between defendant's penis and Z.W.'s hand, and count IV was based on alleged contact between defendant and Z.W.'s naked bodies. Each count originally alleged that the offenses occurred in the period beginning "on or about January 01, 2007 and continuing on through May 25, 2007." However, prior to trial, the trial court granted the State's oral motion to amend the indictment to allege that the offenses occurred between May 27, 2005, and March 1, 2007. Defendant did not object to the amendment.

¶ 4      The case proceeded to a bench trial, where Z.W. testified that she was born on May 26, 2001. She lived with her mother and stepfather but visited her biological father, C.G., "[a]t least twice out of the month" when she was "four or five years old." During some of her visits, C.G. would drop Z.W. off at defendant's home to be babysat by defendant's teenage sister, Malissa Mason, and defendant's mother, Lisa Johnson. Z.W. testified that, while she was at defendant's home, defendant would sometimes take her into his bedroom, remove both of their clothes, and make her participate in sexual acts. Defendant performed oral sex on her and made her perform

oral sex on him "[a]t least ten" times each. Defendant also made Z.W. rub his penis with her hand "[m]ore than once." On "[a]t least ten" occasions, defendant would lay on top of her while they were both naked and "grind" his genitals into hers. Z.W. testified that these encounters occurred for "[a]lmost a year" and stopped when her family moved to Detroit "in the middle of [her] kindergarten year when [she] was five." Z.W. did not mention the abuse to anyone until she told her mother when she was either seven or eight years old. She subsequently also told her father and, later, "Ms. Brand," an assistant principal at her middle school.

¶ 5    M.P., Z.W.'s mother, testified that she and Z.W. moved from Detroit to Illinois in January 2005 and then moved back to Detroit in the spring of 2007. During the time they lived in Illinois, Z.W. would visit C.G. "every other weekend." When Z.W. was eight years old, she first told M.P. that "Michael," who Z.W. described as one of her father's friend's sons, touched her vagina at Michael's house. Z.W. also told C.G. the same approximately a week or two later. M.P. testified that she did not contact the police about what Z.W. told her because she "didn't know an address, a last name, [or] anything about [Michael's] family."

¶ 6    C.G. testified that he was longtime friends with Larry Gamble, the father of defendant and Malissa Mason. C.G. also testified that Z.W. visited him every other weekend during the time she and M.P. lived in Illinois. On some of those weekends, C.G. would drop Z.W. off at the Gamble residence so that Malissa could babysit Z.W. while he was at work. When Z.W. was eight years old, she told C.G. that defendant had sexually abused her "a few times" at the Gamble residence. C.G. did not contact the police because he "didn't want to believe her."

¶ 7    Patricia Brand testified that she is an assistant principal at defendant's middle school. In May 2014, Z.W. came to Brand's office and told her that her "dad's friend" had sexually abused her "several times." Brand did not ask for more details but contacted the police after the meeting.

¶ 8     Forest Park police detective Nick Petrovic testified that he was assigned to investigate the allegations against defendant. Petrovic discovered that defendant's date of birth was December 3, 1991, by searching the Illinois Secretary of State's driver's license database. Petrovic later interviewed defendant at the police station on May 5, 2015. Prior to questioning, Petrovic read defendant his *Miranda* rights from a preprinted form. Defendant initialed next to each right and indicated that he understood them. Petrovic testified that defendant initially denied the allegations but later admitted to one instance in which he "removed [Z.W.'s] underwear and licked her vagina" because "he was horny." Defendant also identified a photograph of Z.W. taken when she was four years old and wrote "the girl's vagina that I licked one time" on the photograph. Petrovic then ended the interview.

¶ 9     The State rested. For the defense, defendant's mother and sister both testified that one of them was always aware of Z.W.'s whereabouts when she was at their home. Both stated that they never saw Z.W. go into defendant's bedroom or defendant take her into his bedroom. Landon Gamble, defendant's stepbrother, also denied ever seeing Z.W. in the bedroom that he shared with defendant during the relevant time period.

¶ 10    Defendant testified on his own behalf and denied having any type of sexual contact with Z.W. Defendant also testified that he did not tell Petrovic that he licked Z.W.'s vagina. Rather, defendant stated he did not understand his *Miranda* rights and only wrote what Petrovic told him to on Z.W.'s photograph because Petrovic told him that he would be able to go home if he did so.

¶ 11    Following closing arguments, the trial court found defendant guilty on all four counts, stating that "[t]here was sexual contact" and that it did not believe defendant's testimony about what occurred in his interview with Petrovic. However, the court later vacated its findings of guilt on counts III and IV, though the court clarified that its ruling on those counts was "not to say that

I don't believe that [Z.W.] is credible and that these incidences, in the way she described, happened."

¶ 12    After a sentencing hearing, the court sentenced defendant to consecutive terms of six years in prison on each count. The court also imposed a "three-year period of mandatory supervised release to lifetime reporting, depending on what the Illinois Department of Corrections says," and "lifetime reporting as a sex offender." The court denied defendant's oral motion to reconsider the sentence, and this appeal followed.

¶ 13                                    II. ANALYSIS

¶ 14    The sole issue on appeal is whether defendant was sentenced under the proper version of the MSR statute. As an initial matter, defendant concedes that he has forfeited the issue by failing to object in the trial court or raise the matter in a posttrial motion. See *People v. Hillier*, 237 Ill. 2d 539, 544 (2010) ("It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required."). Defendant nevertheless argues that we may review the matter under the first prong of the plain error doctrine, which allows a reviewing court to consider a forfeited issue if "a clear and obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant." *People v. Sandridge*, 2020 IL App (1st) 173158, ¶ 21. The first step in a plain error analysis is always to determine whether an error occurred. *Id.*

¶ 15    In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the United States Supreme Court held that, as a matter of due process, any fact that increases the penalty for a crime beyond the prescribed statutory maximum is an element of the offense that must be submitted to the trier of fact and proved beyond a reasonable doubt. In *Alleyne v. United States*, 570 U.S. 99, 103 (2013), the Supreme Court extended this rule by holding that any fact that increases the mandatory

minimum sentence for an offense must also be submitted to the trier of fact and proved beyond a reasonable doubt. In this appeal, defendant contends that his sentence violated his due process rights under *Apprendi* and *Alleyne* because he was sentenced to an increased term of MSR where the State did not prove beyond a reasonable doubt that he committed the offenses after the effective date of the amendment to the MSR statute. For the following reasons, we disagree.

¶ 16    The Unified Code of Corrections provides that all criminal sentences other than life sentences must include a term of MSR. 730 ILCS 5/5-8-1(d) (West 2016). The version of the MSR statute in effect prior to July 11, 2005, provided that the term of MSR for a Class X felony such as aggravated criminal sexual assault shall be three years. 730 ILCS 5/5-8-1(d)(1) (West 2004). However, the statute was amended, effective July 11, 2005, to provide that "for defendants convicted of predatory criminal sexual assault of a child, aggravated criminal sexual assault, or criminal sexual assault, on or after July 1, 2005, the term of mandatory supervised release shall range from a minimum of 3 years to a maximum of the natural life of the defendant." Pub. Act 94-165, § 5, (eff. July 11, 2005) (amending 730 ILCS 5/5-8-1(d)(4)). This amendment created two different punishments for aggravated criminal sexual assault, depending on the date of the offense—offenses committed before July 1, 2005, carried a term of three years on MSR, whereas offenses committed after July 1, 2005, were punishable by the harsher term of three years to life on MSR.

¶ 17    Here, the indictment alleged that defendant committed the offenses sometime between May 27, 2005, and March 1, 2007. Thus, the charging range straddled the crucial date of July 1, 2005. The State cites to *People v. McDade*, 345 Ill. App. 3d 912, 915 (2004), for the proposition that a continuous course of conduct is "not complete until the last act [is] accomplished." However, we agree with defendant that *McDade* has no bearing on this case. In *McDade*, the defendant was

convicted on one count of predatory criminal sexual assault based on numerous assaults that occurred between December 1997 and June 1999. *Id.* at 913. The issue on appeal was whether the defendant was eligible for the harsher restrictions on sentencing credit that became effective in June 1998. *Id.* at 914. This court determined that he was eligible, reasoning that the defendant was charged under a theory that he engaged in a continuous course of conduct that did not end until 1999, after the effective date of the relevant statute. *Id.* at 915-16.

¶ 18     Unlike in *McDade*, defendant's acts here were not charged as a continuous course of conduct, but rather as discrete instances of sexual misconduct. Accordingly, defendant is correct that the State cannot rely on the fact that part of the charging range is past the effective date of the amended MSR statute. Instead, under *Apprendi* and *Alleyne*, the State was required to prove beyond a reasonable doubt that the instances of sexual contact as described in the indictment occurred after the effective date of the amended statute.

¶ 19     Within this framework, defendant contends that the State did not prove when the offenses occurred and that he therefore should have been able to elect to be sentenced to MSR under the previous version of the statute. See *People v. Hollins*, 51 Ill. 2d 68, 71 (1972) (a defendant may elect to be sentenced under either the law in effect at the time of the offense or the law in effect at the time of sentencing). Consequently, defendant asks us to remand the matter so that he can be resentenced to just three years of MSR.

¶ 20     However, we find that defendant was proven beyond a reasonable doubt to have committed the crimes after July 1, 2005. Although the trial court did not explicitly state the specific date or dates on which it found the crimes to have occurred, a finding that they occurred after July 1, 2005, was implicit in the court's sentence. As a trial court is presumed to know and follow the law, including the allocation of the burden of proof (*People v. Groebe*, 2019 IL App (1st) 180503, ¶ 62),

we presume that the court would not have sentenced defendant under the amended statute unless it found that the State proved beyond a reasonable doubt that the offenses occurred after the effective date.

¶ 21    The court's implicit finding regarding the date of the offenses was supported by the record. Where, as here, a defendant challenges the sufficiency of the evidence as to a fact qualifying him for a statutory sentencing enhancement, a reviewing court must determine whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the fact to be true beyond a reasonable doubt. *People v. Trzeciak*, 2014 IL App (1st) 100259-B, ¶ 57. Although, as defendant observes, neither Z.W. nor the State's other witnesses gave a specific date for the offenses, Z.W. testified that the abuse occurred when she was "four or five years old." Notably, Z.W. turned four on May 26, 2005, less than 50 days before the effective date of the amended MSR statute. She also testified that the oral sex on which counts I and II were based occurred on "[a]t least ten" occasions when she was visiting her father, which only happened every other weekend during the relevant time period. Z.W. further testified the abuse continued for "[a]lmost a year," only ending when she and her mother moved to back to Detroit. According to Z.W., the move occurred "in the middle of [her] kindergarten year when [she] was five," presumably meaning during the school year in either late 2006 or early 2007. Z.W.'s mother confirmed that they moved back to Detroit in the spring of 2007, well after the effective date of the amended statute. Especially when viewed in the light most favorable to the State, this was ample evidence to support a finding that at least some of the incidences of oral sex occurred after July 1, 2005.

¶ 22    *People v. Blake*, 221 Ill. App. 3d 586 (1991), upon which defendant relies, bears some similarity to this case but is ultimately distinguishable. In *Blake*, the question on appeal was

whether the State proved beyond a reasonable doubt that the defendant sexually abused the victims after July 1, 1984, the effective date of the statutes under which he was charged. *Id.* at 587. This court reversed the defendant's convictions, reasoning that "the offenses could have occurred before the effective date" because the victims testified only that they were abused on "one day in the summer of 1984." *Id.* at 587-88. Here, in contrast, the evidence established that the offenses occurred not on a single day, but on "[a]t least ten" occasions over an extended period of time, the vast majority of such occasions were after the effective date of the amended relevant statute. Consequently, the trial court did not err in sentencing defendant under the amended MSR statute.

¶ 23 As there was no error, there can be no plain error. *People v. Himber*, 2020 IL App (1st) 162182, ¶ 45. Similarly, to the extent defendant contends that his trial counsel was ineffective for failing to preserve the MSR issue, that argument also fails. *People v. Hensley*, 2014 IL App (1st) 120802, ¶ 47 ("[T]he failure of a defendant to show that error occurred at all defeats both an ineffective assistance claim and a claim of error under either prong of the plain error doctrine."). Consequently, defendant's sentence is affirmed.

¶ 24                                      III. CONCLUSION

¶ 25 For the reasons stated, we affirm the judgment of the circuit court.

¶ 26 Affirmed.

**No. 1-17-2124**

| | |
|---|---|
| **Cite as:** | *People v. Mason*, 2020 IL App (1st) 172124 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 15-CR-8383; the Hon. Paula M. Daleo, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and John R. Breffeilh, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Mary L. Boland, and Miles J. Keleher, Assistant State's Attorneys, of counsel), for the People. |